**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DAVID LOPEZ,      :
           :  Civil Action No. 10-3725 (SRC)
    Plaintiff,  :
           :
           :
    v.     :  **OPINION**
           :
CHRIS CHRISTIE, et al.,   :
           :
    Defendants.  :

**APPEARANCES:**

   DAVID LOPEZ, Plaintiff <u>pro</u> <u>se</u>
   #000150
   Special Treatment Unit
   CN 905, 8 Production Way
   Avenel, New Jersey 07001

**CHESLER**, District Judge

   Plaintiff, David Lopez, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>.  Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

   At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice at this time.

## I.  BACKGROUND

Plaintiff, David Lopez ("Lopez"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez, Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steven Johnson, NJDOC Administrator; and Merril Main, NJDHS Administrator.  (Complaint, Caption and ¶¶ 4b-4f).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Lopez alleges that, on May 18, 2010, he brought to Steve Johnson's attention that the officers at the East Jersey State Prison ("EJSP") were treating the residents transferred from the Northern Regional Unit ("NRU") in Kearny, New Jersey, like prisoners in segregation.  Plaintiff complains that this treatment places him under mental stress.  (Complaint, ¶ 6, Statement of Claims).

Lopez further alleges that, on May 27, 2010, he was pat searched and finger ("ion") scanned when he walked to another

unit, making him feel like a prisoner.  Lopez states that he has
brought these concerns to the attention of his therapist, but he
has not received any relief from the stress he feels being housed
on prison property.  (Id.).

On June 13, 2010, the defendants allegedly ignored
complaints that the residents are being housed in a prison
facility.  (Id.).

Lopez asks that he be provided with "the proper treatment of
a federally funded facility."  He also seeks an unspecified
amount in compensatory damages for the mental anguish and stress
that he is suffering in being transferred to a prison facility.
(Compl., ¶ 7).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a
civil action where the litigant is proceeding in forma pauperis.
Specifically, the court is required to identify cognizable claims
and to sua sponte dismiss any claim that is frivolous, malicious,
fails to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief,
pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because
Lopez is proceeding in forma pauperis in this matter, this action
is subject to sua sponte screening for dismissal under 28 U.S.C.
§ 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court

4

reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  Id.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  <u>Fed.
> Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must

now allege "sufficient factual matter" to show that a claim is

facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Id</u>. at 1948.  The Supreme Court's ruling in

<u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the

allegations of his complaint are plausible.  <u>Id</u>. at 1949-50; <u>see</u>

6

also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside,
578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides
the "final nail-in-the-coffin for the 'no set of facts' standard"
set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that
applied to federal complaints before Twombly.  Fowler, 578 F.3d
at 210.  The Third Circuit now requires that a district court
must conduct the two-part analysis set forth in Iqbal when
presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]   In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"   Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

---

[2]  In Conley, as stated above, a district court was
permitted to summarily dismiss a complaint for failure to state a
claim only if "it appear[ed] beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of
facts" standard, a complaint could effectively survive a motion
to dismiss so long as it contained a bare recitation of the
claim's legal elements.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Lopez brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.   West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

8

IV.  THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent
> or found not guilty by reason of insanity for commission of
> a sexually violent offense, or has been charged with a
> sexually violent offense but found to be incompetent to
> stand trial, and suffers from a mental abnormality or
> personality disorder that makes the person likely to engage

9

in acts of sexual violence if not confined in a secure
facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual
review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released
from involuntary civil commitment upon recommendation of the DHS
or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.   ANALYSIS

A.   Transfer to Prison Facility Claim

The principal claim asserted in Lopez's Complaint is that
his transfer to a prison facility, as a civilly committed person
under the SVPA, is unconstitutional.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme
Court of the United States examined the conditions of confinement
provided by Kansas' Sexually Violent Predator Act.  The Act
called for the confinement of sexually violent predators in a
secure facility because they were dangerous to the community.
Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was
aware that the sexually violent predators in Kansas were to be
held in a segregated unit within the prison system.  However, the
Court noted that the conditions within the unit were essentially
the same as conditions for other involuntarily committed persons
in mental hospitals.  Moreover, confinement under the Act was not
necessarily indefinite in duration, and the Act provided for
treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the

10

Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed. Id., 521 U.S. at 368-69. See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[3] See Bagarozy v. Goodwin, Civil Action No. 08-468 (SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002). Therefore, this Court finds that Lopez's transfer, with the SVP residents of the Kearny facility, to a segregated unit in the East Jersey State Prison does not, in and of itself, violate the U.S. Constitution's Due Process Clause. Accordingly, the claim that plaintiff's transfer to a segregated unit within a prison facility is unconstitutional will be dismissed for failure to state a cognizable claim of a constitutional deprivation.

---

[3] Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released. United States v. Comstock, No. 08-1224, __ U.S. __, 130 S.Ct. 1949 (May 17, 2010). Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

B.  Conditions of Confinement Claim

Although plaintiff's transfer to a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Lopez makes additional allegations concerning the conditions of confinement at the EJSP facility.  For instance, he complains that he will be housed in a prison facility subject to restrictions.  See Youngberg v. Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[4] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22.  Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307.  The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due

---

[4]  In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

process requires that the conditions and duration of confinement
[for civilly confined persons] bear some reasonable relation to
the purpose for which persons are committed." Seling, 531 U.S.
at 265.  While the nature of an SVP's confinement may factor in
this balance of what is reasonable, it is clearly established
that the substantive due process protections of the Fourteenth
Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061
(8th Cir. 2001)(applying the Fourteenth Amendment's "objective
reasonableness" standard to excessive force claims brought by
civilly committed SVPs).

    Lopez's main allegation with respect to the conditions of
his confinement relates to his contention that he is now housed
in a prison facility.  However, he does not allege any
restrictions that would show this confinement to be punitive.
Even if plaintiff has temporary restrictions, the Third Circuit
has held that placement of a civilly committed SVP in segregated
confinement does not violate due process unless the deprivation
of liberty is in some way extreme.  See Deavers v. Santiago, 243
Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515
U.S. 472 (1995),[5] to segregated confinement of civilly committed
SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir.
2002)(likewise extending Sandin to civil commitment settings).

---

        [5]  In Sandin, the Supreme Court held that there was no
cognizable liberty interest in freedom from additional restraint
in a prison setting.  See 515 U.S. at 486 ("We hold that [the
prisoner's] discipline in segregated confinement did not present
the type of atypical, significant deprivation in which a State
might conceivably create a liberty interest.").

As stated above, Lopez's complaints about the restrictions on his confinement are minimal and clearly temporary.

Therefore, with respect to his conditions claims as alleged, this Court finds that Lopez has failed to state a cognizable claim in this regard at this time, and the alleged conditions of confinement claims will be dismissed without prejudice. To the extent that Lopez can allege facts to show that unconstitutional conditions of confinement exist and have continued for a longer period of time than suggested by the NJDHS and NJDOC administrators, Lopez may seek leave to re-open this case and file an amended pleading.[6]

C.  Unlawful Search Claim

Lopez also alleges that he was subjected to a "pat down" search and ion finger search when he left his unit at EJSP. It would appear that plaintiff is asserting that as a civilly committed person, such searches are unconstitutional and violate his rights under the Fourth Amendment.

---

[6]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Lopez should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Lopez & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1988)(quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks
omitted).  The same conclusion was reached with respect to
pretrial detainees other than convicted prisoners.  See Bell v.
Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity
searches of pretrial detainees do not violate the Fourth
Amendment).[7]

Consequently, involuntarily committed patients and SVPs,
like pretrial detainees, are entitled to some protection under
the Fourth Amendment, but they do not have an expectation of
privacy equal to an individual in society generally.  See Serna
v. Goodno, 567 F.3d 944, 948 (8th Cir. 2009)(noting that pretrial
detainees are kept in custody because there is cause to believe
they are dangerous; similarly, commitment under Minnesota law as
a sexually dangerous person requires a finding of dangerousness),
cert. denied, 130 S.Ct. 465 (2009); Allison v. Snyder, 332 F.3d
1076-79 (7th Cir. 2003)(SVPs may be subjected to conditions that
advance goals such as preventing escape and assuring the safety

---

[7]  In Bell v. Wolfish, the United States Supreme Court, in
determining the constitutionality of post-visitation body cavity
searches, held that a reasonableness test should be employed when
examining the constitutionality of a search that encroaches upon
the personal privacy of an inmate and the integrity of the
inmate's body.  In other words, courts must balance the need for
the particular search against the invasion of personal rights
that the search entails.  Courts must consider the scope of the
particular intrusion, the manner in which it is conducted, the
justification for initiating it, and the place in which it is
conducted.  441 U.S. 520, 559 (1979); see also Turner v. Safley,
482 U.S. 78 (1987) (a prison regulation which infringes upon an
inmate's constitutionally recognized right is valid only if it is
reasonably related to a legitimate penological interest).

of others, even though they may not technically be "punished"),
cert. denied, 540 U.S. 985 (2003); Aiken v. Nixon, 236 F. Supp.2d
211, 233 (N.D.N.Y. 2002), aff'd 80 Fed. Appx. 146 (2d Cir. 2003);
see also, Jennings v. New York State Office of Mental Health, 786
F. Supp. 376, 382, 384 (S.D.N.Y. 1992), aff'd, 977 F.2d 731 (2d
Cir. 1992).

Similarly, the United States Court of Appeals for the Ninth
Circuit has held that, because SVPs have been civilly committed
subsequent to criminal convictions and have been adjudged to pose
a danger to the health and safety of others, they are subject to
"[l]egitimate, non-punitive government interests" such as
"maintaining jail security, and effective management of [the]
detention facility." Jones v. Blanas, 393 F.3d 918, 932 (9th Cir.
2004). Thus, the reasonableness of a particular search or
seizure is determined by reference to the detention context and
is a fact-intensive inquiry. Id.

Here, with respect to his Fourth Amendment claim, Lopez's
primary argument appears to be that any prison actions that did
not specifically take into account his classification as a SVP is
per se a constitutional violation. Applying the balancing test
employed by Wolfish, this Court finds that the manner and place
in which Lopez was pat-searched and finger-scanned were plainly
reasonable and did not violate his Fourth Amendment rights.
First, the pat search and finger scan were conducted when Lopez
was leaving his unit. See Semler v. Ludeman, 2010 WL 145275,

*19, D. Minn. Jan. 8, 2010)(finding no Fourth Amendment violation where plaintiffs were required to submit to pat searches following gym use and kitchen work assignments that included removal of socks and shoes, opening their mouths, showing their zippers, showing behind their ears and running their fingers through their hair; search was "not highly intrusive" and was "not unlike the scope of searches of the general public at airport security checkpoints). See also Serna, 567 F.3d at 955-56 (upholding reasonableness of a facility-wide visual body cavity search after a cell phone case (cell phones considered contraband) was found, because, while invasive, the searches were conducted privately, safely, and professionally, and the facility was reacting to a recurring problem involving contraband cell phones.

Moreover, there are no allegations that the guards conducted the pat search and finger scan in a menacing or degrading manner. Lopez does not allege that there was physical force used or that the search was done in a menacing manner. See Kitchens v. Mims, 2010 WL 1240980 (E.D.Cal. March 25, 2010). Accordingly, based on all of these factors, this Court will dismiss Lopez's Fourth Amendment unlawful search claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a cognizable claim under § 1983.

D.   Interruption of Treatment Claim

Finally, Lopez appears to assert that therapy/treatment sessions will be completely denied because of the transfer to EJSP.  He contends that he will be denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937).  These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).  Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where the conduct does not implicate any specific fundamental right.  See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302

(1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred as the rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Lopez's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender. The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated. Youngberg, 457 U.S. at 320. Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly

20

burden the ability of states, specifically their professional employees, to administer mental health institutions. Id. at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Id. at 321 (internal quotation and citation omitted). Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses. 288 F.3d at 545. Leamer was not a civilly committed sex offender like plaintiff here. Rather, Leamer was a convicted sex offender whose confinement and treatment were inextricably linked pursuant to statute. The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment,"

21

which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point. Leamer could not reduce his sentence through good behavior credits, parole policies or other credits. Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence. Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the violation of recognized fundamental rights to safety and freedom from physical restraints, this Court finds the Third Circuit's holding in Leamer to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA. Like Leamer, the length of Lopez's confinement under the SVPA is predicated on his response to treatment. Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy. See N.J.S.A. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and **treatment** of sexually violent predators")(emphasis added); N.J.S.A. 30:4-34(b)("The Division of Mental Health Services in the Department

22

of Human Services shall provide or arrange for treatment for a
person committed pursuant to this act.  Such treatment shall be
appropriately tailored to address the specific needs of sexually
violent predators."); N.J.S.A. 30:4-27.36(a)(At any time during
the involuntary commitment of a person under this act, if the
person's treatment team determines that the person's mental
condition has so changed that the person is not likely to engage
in acts of sexual violence if released, the treatment team shall
recommend that the Department of Human Services authorize the
person to petition the court for discharge from involuntary
commitment status"); see also Kansas v. Hendricks, 521 U.S. 346,
367 (1997)(concluding from similarly-worded provisions of Kansas
SVP Act that "the State has a statutory obligation to provide
'care and treatment for [persons adjudged sexually dangerous]
designed to effect recovery ....")(alterations in
original)(internal citations omitted).

        Therefore, based on Youngberg and Leamer, this Court
concludes that Lopez may have a fundamental liberty interest in
treatment, but has not stated a cognizable claim at this time for
purposes of both procedural and substantive due process analyses.
See Bailey v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991),
cert. denied, 503 U.S. 952 (1992)(where the Eighth Circuit noted
that Youngberg did not establish a right for the civilly
committed to treatment per se; the Supreme Court only "held that
the Constitution required only such 'minimally adequate training

                            23

... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322). In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'" because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement." Id. at 1153, 1154. Citing Bailey, district courts in the Eighth Circuit have since concluded that civilly committed sexual predators have no substantive due process right to mental health treatment, adequate or otherwise. See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has not recognized a constitutional right to effective 'treatment' in the context of civilly committed sex offenders, Plaintiffs [alleging substantive due process violations through ineffective treatment] have failed to allege a due process claim ....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Indeed, based on the allegations and admissions by plaintiff in his Complaint, Lopez has not shown any procedural or substantive due process violations at this time. With respect to Lopez's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit. In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest. Leamer, 288 F.3d at 546. In the instant case, Lopez will not actually be confined in administrative segregation for the purpose of punishment, but rather, he and the other SVP residents at the Kearny facility have simply been transferred to a unit at EJSP separate and apart from the convicted prisoners.

Moreover, there is no absolute denial of treatment, only a projected estimation that treatment might be delayed while the transfer takes place and living quarters are made suitable for the residents.

This Court likewise finds no substantive due process violation at this time. Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered

liberty." Glucksberg, 521 U.S. at 721. Under this standard, Defendants' actions in denying Lopez his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience. See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, despite Lopez's initial allegation, defendants have not categorically declined to provide any mental health treatment to the SVP residents at EJSP, but only projected a short period for disruption of treatment so as to accomplish the transfer and/or renovation of the segregated unit at EJSP. Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Lopez's substantive due process rights. Indeed, plaintiff's allegation is merely speculative and it is not readily apparent that his treatment has been disrupted for a significant time.

Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged. Any

26

deviation in providing treatment appears to be speculative and merely temporary to accomplish the transfer and renovate the SVP quarters at EJSP. Therefore, this Court concludes that the alleged short-lived disruption of therapy and treatment, if any, has not been shown to be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Lopez's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at this time.

### V.   CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may seek leave to re-open this case to file an amended pleading to cure the deficiencies noted herein. An appropriate order follows.

STANLEY R. CHESLER
United States District Judge